**Paul Timothy CAVENDER and Barbara Cavender, Plaintiffs,**

v.

**CONSOLIDATED RAIL CORPORATION, d/b/a Conrail, Defendant and Third-Party Plaintiff,**

v.

**E.I. duPONT de NEMOURS AND COMPANY, INC., Third-Party Defendant.**

**Civ. A. No. 83–A044.**

United States District Court, S.D. West Virginia, Parkersburg Division.

July 23, 1984.

Harvey D. Peyton, Calwell, McCormick & Peyton, LC, Nitro, W. Va., for plaintiffs.

Robert H.C. Kay, Kay, Casto & Chaney, Charleston, W. Va., for Conrail.

George G. Guthrie, Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for duPont.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before this Court is Defendant Conrail's motion for summary judgment and Third-Party Defendant duPont's motion to dismiss. Briefly, this case involves a personal injury action by Cavender alleged to be the result of Conrail's placing two defective railroad cars on the duPont tracks at duPont's Bell, West Virginia, plant. Conrail impleaded duPont on the

basis of a private sidetrack agreement. There appears to be no dispute that the tracks were under the complete control of duPont, and it further appears there is no dispute that the cars, at the time of the accident, were also under the complete control of duPont. Conrail placed the cars in issue, GATX 83857 and DUPX 20077, on duPont's tracks on May 5, 1980, and May 7, 1980, respectively. The accident giving rise to this litigation occurred on May 14, 1980. The affidavits filed by the parties and the pleadings reflect that the accident resulted when the two cars let loose and began to move. Cavender attempted to set the hand brake on the cars to stop them, but was unsuccessful. While the cars were rolling toward an intersecting highway, but yet remained on duPont's tracks, Cavender jumped from the cars to attempt to warn approaching highway traffic. In doing so, he injured his foot.

The issues raised by this motion for summary judgment and motion to dismiss depend initially on whether Conrail owed any duty to Cavender, who is an employee of duPont. Secondly, if such a duty is found, there is in issue whether duPont properly was made a Third-Party Defendant in this suit. These issues will be considered in order.

### I.

■ A motion for summary judgment is proper only where there is no genuine issue of material fact to be determined at a trial. 10 Wright & Miller, *Federal Practice and Procedure*, § 2712. It is clear that since the cars in question were on the side track of duPont at the time the accident occurred, the application of "absolute liability" of the Federal Safety Appliances Act, 45 U.S.C. § 1, *et seq.*, is not appropriate. *Monongahela Railway Co. v. Black*, 235 F.2d 406 (4th Cir.1956) draws the distinction that where the recipient of the railroad cars, commonly an industrial user who loads the cars in preparation for transport, operates its own locomotives and train crews, that the absolute liability of the Federal Safety Appliances Act is inap-

propriate. *See also, Patton v. Baltimore & Ohio Railroad Co.*, 197 F.2d 732 (3d Cir.1952) (where industrial user of railroad's services operated its own locomotives and train crews, defective cars were not considered to be on the line of the railroad company for the purposes of the Federal Safety Appliances Act). However, the lack of an "absolute" duty to the Plaintiff does not exclude all other causes of action. In fact, the Federal Safety Appliances Act confers no right of action by itself. *Crane v. Cedar Rapids & Iowa City Railway Co.*, 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1968). *Crane* directs one's attention to the state common law, and the Court goes so far as to state that if a nonemployee were to bring an action against a railroad which was not diverse, that a federal court would not have jurisdiction as there is no federal question. 395 U.S. at 166–67, 89 S.Ct. at 1708–09. *Cf., Hunter v. Missouri-Kansas-Texas Railroad Co.*, 276 F.Supp. 936, 940–41 (N.D. Okla.1967) *affirmed* 433 F.2d 352 (10th Cir. 1970).

■ It, therefore, becomes the task of this Court to determine whether the Plaintiffs' complaint and the affidavits filed concerning this motion for summary judgment constitute a survivable claim for negligence under West Virginia law. *Walker v. Robertson*, 141 W.Va. 563, 91 S.E.2d 468 (1956) defines negligence as "the failure of a reasonably prudent person to exercise due care in his conduct toward others from which injury may occur." 91 S.E.2d at 473. The negligence action requires a showing that there was a duty on the part of the Defendant, a breach of that duty and that the breach of that duty resulted in injury. *Gasber v. Coast Construction Corp.*, 134 W.Va. 576, 60 S.E.2d 193, 195 (1950). It is not necessary, however, that the complaint specifically allege that the Defendant owed a duty; it is sufficient to allege facts from which the law can find a duty. *Id.*

■ A recent Supreme Court of Appeals of West Virginia case considered the question of when a duty arises. *Robertson v. LeMaster*, 301 S.E.2d 563 (W.Va.1983) in-

volved a case where a railroad worked an employee for a number of hours and then sent him to drive fifty miles home. In his fatigued state from working the excessive hours, the employee was involved in an accident on his trip home. The railroad defended on the basis it owed no duty to the individual injured in the accident. Finding a directed verdict in favor of the Defendant inappropriate, the West Virginia Court held that where a person engages in affirmative conduct and realizes or should realize that such conduct would result in an unreasonable risk of harm to another, such person is under a duty to exercise reasonable care to prevent the threatened harm. 301 S.E.2d at 567. The Court held that the determination of the existence of such a duty is dependent upon the facts and circumstances surrounding the individual case. 301 S.E.2d at 568. Central to the question of duty is whether the conduct of the Defendant foreseeably could produce an injury. Other factors included the likelihood that an injury would result from such conduct, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the Defendant. *Id.*

■ The affidavits filed by the Defendant reflect that the cars in question were inspected by Defendant Conrail before being taken to the duPont plant. The affidavits offered by the Defendant also suggest that the defect in the cars arose between the delivery dates, May 5 and May 7, 1980, and the date of the accident, May 14, 1980. The affidavits supplied by the Plaintiffs take issue with this, stating that the cars delivered to the duPont plant were often in an "abominable" condition. Given the dangerous nature of the railroad business, the apparent likelihood that an unsecured railroad car would cause injury, and the recognized duty of the railroad to maintain equipment, this case cannot be appropriately disposed of by way of summary judgment given the factual dispute. *See Sommerville v. Pennsylvania Railroad Co.,* 151 W.Va. 709, 155 S.E.2d 865 (1967) (recognizing negligence action against a railroad by a nonemployee for failure to

maintain equipment); *Sanders v. Georgia-Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218, 221–222 (1976) (referring to the railroad's duty of care as "inescapable"); *Norfolk and Western Railway Co. v. Chrisman,* 219 Va. 184, 247 S.E.2d 457, 459 (1978) ("The railroad has a duty to furnish a car in such a condition that it could be unloaded safely").

The Defendant offers *Littlejohn v. Conrail,* Slip Opinion Civil Action 79–2404 (S.D. W.Va., Aug. 7, 1981), to support its position that it owes no duty to the Plaintiffs in this case. It should be noted that on page six of the opinion the plaintiff did not contend that Conrail had damaged the couplers which constituted the defect in issue. Further, as noted by the Court at footnote three on that same page, there is a distinction between the duty of a railroad with respect to couplers and the duty of a railroad with respect to brakes. *See also* 49 C.F.R. § 232.14(a) (noting the duty of the railroad to inspect hand brakes). In the instant case, the Plaintiff has alleged that the defect existed before the cars arrived at the duPont plant. Secondly, this case involves the failure of hand brake which raises considerations of duty different than those considered in the *Littlejohn* case.

The grounds offered by the Defendant having failed to present only an issue of law, its motion for summary judgment is hereby denied.

II.

■ Third-Party Defendant duPont raised a motion to dismiss the third-party complaint against it on essentially two grounds. First, it complains that the complaint against it by Conrail is not appropriate under the private side track agreement; and second, duPont asserts that this is not a proper action under *Rule* 14(a), Federal Rules of Civil Procedure. It should first be noted that duPont does not challenge the validity of the private side track agreement which is appended as Exhibit B to the third-party complaint. Page four of the

agreement, under the second paragraph of the fifth section, states in relevant part:

"The industry shall assume responsibility for and save the railroad company harmless from all losses (including workmen's compensation) damages, claims and judgments arising from or growing out of the sole actionable acts or admission of the industry, its agents or employees; and (c) the parties hereto shall equally bear all losses (including workmen's compensation), damages, claims and judgments arising from or growing out of the joint or concurring actionable acts or omissions of both parties hereto, their respective agents or employees."

The relevant portion of *Rule* 14(a) states that a third party action may be maintained against one who is or may be liable to him for all or part of the plaintiff's claim. *Cox v. E.I. duPont de Nemours and Co.*, 269 F.Supp. 176, 179 (D. S.C.1967) held that where a substantive right for indemnification or contribution is alleged the courts have repeatedly held that the procedure for the enforcement of that right is set forth in *Rule* 14. The pleadings reflect that the defects causing the accident which forms the basis of this litigation lie not only with the railroad cars, but also with the track. It is further apparent that the track was in the control of duPont. Since the side track agreement provides for indemnification or contribution for liability resulting from du-Pont's acts or omissions, it is clear that this is an appropriate case for *Rule* 14 impleader. The agreement certainly suggests that this is the sort of liability against which the railroad sought to protect itself. It is not apparent on the face of the agreement that it does not apply to this situation and du-Pont has provided no substantive arguments why the agreement should not be construed to apply to this situation.

■ duPont also raises the objection that the third-party complaint was not filed within ten days after the answer of Conrail. *Rule* 14(a) states that:

"The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint no later than ten days after he serves his original answer. Otherwise, he must obtain leave on motion upon notice to all parties to the action."

In the instant case Conrail filed its answer on September 21, 1981, and filed its third-party complaint on October 2, 1981, one day beyond the ten-day period mentioned in *Rule* 14(a). The Court would note that *Rule* 1 of the Federal Rules of Civil Procedure states that the rules "shall be construed to secure a just, speedy and inexpensive determination of every action." Finding that the delay of the filing of the third-party complaint to be most minimal, finding further that no party has asserted that their interests have been prejudiced by this one-day delay, and finding that requiring the Third-Party Plaintiff to refile upon the proper motion would cause unnecessary delay and expense, this Court is not inclined to dismiss the third-party complaint on the basis that it was filed one day late.

The grounds offered by duPont having failed to prevail, the Court, therefore, denies its motion to dismiss or in the alternative strike the third-party complaint.